UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORTEZA ZAKERI (A# 217-018-723), | No. 2:25-cv-3187 AC |
| Petitioner, | |
| v. | ORDER |
| DEPARTMENT OF JUSTICE, et al., | |
| Respondents. | |

Pursuant to the parties' consent, this case is assigned to the magistrate judge for all purposes. ECF No. 11. For the reasons that follow, the petition for writ of habeas corpus is granted.

I.      Background

        A.  Factual Background

Petitioner, Morteza Zakeri, entered the United States as a refugee on July 5, 2017. ECF No. 13 (Notice to Appear) at 40. On October 21, 2019, petitioner adjusted his status to that of a lawful permanent resident. Id. On December 13, 2023, he was convicted of several crimes. ECF No. 13 at 22-23.

On June 3, 2024, Immigration and Customs Enforcement ("ICE") apprehended petitioner at a probation office in North Carolina. Id. Petitioner was served with a Notice to Appear ("NTA"), which charged him as removable under INA §§ 237(a)(2)(A)(i) and 237(a)(2)(B)(i)

1

based on his criminal convictions.  ECF No. 13 at 40.  On October 16, 2024, an immigration judge ordered petitioner "removed to Afghanistan or in the alternative to Iran on the charge(s) contained in the Notice to Appear."  ECF No. 33-4 (Order of Immigration Judge).  Petitioner waived appeal.  ECF No. 13 at 56.

On October 17, 2024, ICE submitted a "Request for Afghan Transportation Letter."  ECF No. 33-2 (Declaration of Deportation Officer, Patrick J. Cruz ("Cruz Decl.")) ¶ 19.  The request was denied for "unknown reasons" on July 8, 2025.  Id.  On or about July 8, 2025, ICE prepared and submitted a second request.  Id. ¶ 21.  To date, respondents have not informed the court that they have secured travel documents for petitioner, who remains in custody.[1]

B.  Procedural Background

This action commenced on November 3, 2025, when petitioner, who was proceeding without counsel at the time, filed a petition for writ of habeas corpus.  ECF No. 1.  Respondents filed a motion to dismiss on December 5, 2025.  ECF Nos. 13.  Due to correspondence issues, the court did not receive petitioner's one-page opposition to respondents' motion and a motion to appoint counsel until February 2, 2026.  ECF Nos. 16, 19-21.

On February 4, 2026, the court granted petitioner's motion to appoint counsel, directed the Federal Defender's Office to identify counsel, and set a briefing schedule for an amended or supplemental petition, answer/response, and reply/traverse.  ECF No. 22.  Counsel was identified and appointed to represent petitioner.  ECF Nos. 25, 26.

On February 11, 2026, petitioner, through counsel, filed an opposition to the motion to dismiss.  ECF No. 27.  Upon review of the opposition, the court determined that petitioner had raised a new claim in his opposition, which was not presented in the petition, and that petitioner sought additional relief based on a new claim.  ECF No. 28.  As a result, the court ordered petitioner to file an amended petition by March 11, 2026, if he sought to have the additional claim

---

[1]  The ICE Inmate Locator website, operated by the Department of Homeland Security, confirms petitioner remains in custody at California City Corrections Center as of the date of this order.  See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

considered. Id.

On March 10, 2026, petitioner, through counsel, filed an amended petition for writ of habeas corpus. ECF No. 33.[2] Respondents filed a renewed motion to dismiss and an opposition to the amended petition. ECF No. 34. On March 16, 2026, petitioner filed a reply. ECF No. 36.

II.     The Amended Petition

The amended petition asserts that (1) petitioner's prolonged and indefinite detention, as well as (2) any attempt to remove him to a third country without notice and a meaningful opportunity to be heard, violate petitioner's due process rights. ECF No. 33 at 4-12. By way of relief, petitioner seeks his immediate release under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5 and an injunction preventing respondents from removing him to a third-country without providing him and his counsel at least ten days to raise a fear-based claim for relief from removal to the identified country and a meaningful opportunity to be heard on such claim. Id. at 12.

III.    Motion to Dismiss

In response to both the original and amended petitions in this action, respondents filed motions to dismiss. ECF Nos. 13, 34. The motion to dismiss the amended petition incorporates by reference the arguments in the previous motion to dismiss the original petition, and adds arguments regarding petitioner's new third country removal claim. See ECF No. 34. Respondents argue that petitioner is not entitled to relief based on prolonged and/or indefinite detention because he fails to satisfy the "good reason to believe" standard under Zadvydas v. Davis, 533 U.S. 678 (2001). Respondents also argue that in May 2025, Immigration and Customs Enforcement ("ICE") determined that petitioner's continued detention was warranted because petitioner was unable to satisfy the requirements under 8 C.F.R. § 241.4(e) and explained that

---

[2] On March 9, 2026, the court received several pro se documents from petitioner and determined that they were duplicative of prior filings and that it appeared to be the result of petitioner's mail being returned as "undeliverable." ECF No. 32. The court denied the duplicative motion to appoint counsel as moot and instructed respondents to investigate the issue with petitioner's receipt of court mail. Id. Respondents filed a notice regarding the mail issue. ECF No. 35. The court corrected petitioner's mailing address accordingly.

3

they were working on obtaining travel documents from Afghanistan and other countries; ICE's declaration in support of the opposition explains they are in the process of removing petitioner to Afghanistan; and petitioner's removal order shows petitioner can be removed to Afghanistan *or* Iran. ECF No. 13 at 5-8. Respondents further contend petitioner's third-country removal claim is speculative and that an injunction is unnecessary because respondents plan to abide by Ninth Circuit authority, which they understand to require notice and an opportunity to be heard prior to removal to a third country. ECF No. 34 at 2-3. Nonetheless, they acknowledge that the undersigned "has already found the policy at issue as violative of due process and ordered procedures akin to that requested in this matter." Id. at 4 (citing Pham v. Warden, No. 1:25-cv-1873 DC AC, 2026 WL 673404, at *17 (E.D. Cal. Mar. 10, 2026)).

IV.     Legal Standard

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). The writ of habeas corpus extends to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citation omitted), superseded by statute on other grounds, Nasrallah v. Barr, 590 U.S. 573580 (2020). "District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

////

////

4

V.   Discussion

A.   Ground One: Prolonged Detention Violates Due Process

1.   Legal Standard

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A).  During the removal period, the noncitizen shall be detained.  8 U.S.C. § 1231(a)(2).  "[Section] § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."  Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After the 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'"  Id. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).  The second category includes noncitizens ordered removed under 8 U.S.C. § 1227(a)(2).  8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  Zadvydas, 533 U.S. at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention."  Id. at 701.  "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

2.   Analysis

The parties do not dispute that petitioner is subject to detention under 8 U.S.C. § 1231(a)(6) based on his order of removal pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(i) and

1227(a)(2)(B)(i); nor do they dispute that petitioner's detention post-final-order of removal has extended beyond the presumptively reasonable six-month period.  Instead, they dispute whether petitioner has met his burden under Zadvydas to establish a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and if so, whether respondents have sufficiently rebutted the showing.  Based on the record, the undersigned finds that petitioner has met his burden and respondents have not sufficiently rebutted.

a.   "Good Reason to Believe"

"The 'good reason to believe' standard is not a very high bar."  Sahin v. Casey, No. 3:26-cv-1078 JES BJW, 2026 WL 800558, at *2 (S.D. Cal. Mar. 23, 2026).  The standard "'does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that.'" Nguyen v. Hermosillo, No. 2:26-cv-00335 GJL, 2026 WL 58497, at *3 (W.D. Wash. Feb. 26, 2026) (quoting Senor v. Barr, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up)); see also Freeman v. Watkins, No. CV B:09-160, 2009 WL 10714999, at (3 (S.D. Tex. Dec. 22, 2009) (under the "good reason to believe" standard, "petitioner need not establish that there exists no possibility of removal").

Petitioner argues that the following establish his burden under the "good reason to believe" standard: (1) petitioner's detention for almost eighteen months, which is almost three times the presumptively reasonable period in Zadvydas; (2) petitioner has no country to return to because he is stateless; (3) the denial of the first request for travel documents to Afghanistan for "unknown reasons"; (4) the fact that the second request has been pending since July 2025; and (5) the lack of attempt to remove petitioner to Iran, for which the prospect of removal has diminished in light of the current conflict between the United States and Iran.  ECF No. 33 at 5.

In opposition, respondents incorporate their arguments from their first motion to dismiss and argue petitioner has not met his burden because petitioner's "three rationales . . . are entirely irrelevant to the analysis under Zadvydas."  ECF No. 13 at 5.  According to respondents, the first rationale is based on prolonged detention without a bond hearing, which respondents argue petitioner is not entitled to.  Id. at 6.  The second rationale is based on petitioner's statelessness,

6

which respondents argue is unsupported by the statute that allows removal to a category of countries without being a citizen.  Id.  The third rationale is based on the continued validity of the basis for petitioner's refugee status, which respondents argue is not evidence that "he is unlikely or cannot be removed to any country."  Id.

However, the amended petition, which supersedes the original petition, no longer advances all three of the rationales discussed by respondents in their original motion to dismiss. The amended petition argues four new rationales and only reasserts petitioner is stateless.  ECF No. 33 at 5-6.  Accordingly, respondents' arguments with respect to a bond hearing and continued validity of the basis for petitioner's refugee status are no longer relevant and warrant no further discussion.

With respect to the rationales advanced in the amended petition, the undersigned finds that petitioner has provided evidence to support all but one.  See ECF Nos. 33-2 (Cruz Decl.), 33-3 (Form I-213, Record of Deportable/Inadmissible Alien), 33-4 (Order of Immigration Judge). Specifically, the record before the court shows that, despite petitioner's detention for almost eighteen months, which is three times the presumptively reasonable period, respondents have not been able to remove him, have not been able to secure travel documents to Afghanistan, and have not attempted to secure travel documents to Iran or another third country.  ECF Nos. 33-2 (Cruz Decl.) ¶¶ 18-21, 33-3 (Form I-213, Record of Deportable/Inadmissible Alien), 33-4 (Order of Immigration Judge).  The record also shows that respondents' first attempt to secure documents from Afghanistan was unsuccessful for "unknown reasons," and that the second request has been pending for nine months, with no indication of when it may be adjudicated.  ECF No. 33-2 ¶¶ 19, 21.  The record, however, does not establish that petitioner is stateless.  The declaration of the deportation officer and petitioner's Form I-213 state petitioner is a citizen of Afghanistan and a native of Iran.  ECF No. 33-2 ¶ 7, ECF No. 33 at 1.  The removal order, which orders petitioner's removal to Afghanistan or Iran, suggest the same.  ECF No. 33-4 at 1.  Absent contrary evidence, which petitioner has not provided, it appears that petitioner is not stateless and accordingly this rationale does not support a finding in favor under the "good reason to believe" standard.

Nonetheless, the undersigned finds that all the other evidence discussed above sufficiently

supports a finding that petitioner has satisfied the "good reason to believe" standard.

Accordingly, the burden shifts to respondents to rebut.

b.    Burden to Rebut

Respondents argue petitioner's detention is lawful because, in May 2025, ICE conducted a custody review under 8 C.F.R. § 241.4 and explained that (1) petitioner failed to satisfy the factors for release set forth in 8 C.F.R. § 241.4(e), and (2) ICE "was working with Afghanistan and other countries to obtain travel documents for his removal." ECF No. 13 at 7-8. They further argue that petitioner's removal order to Afghanistan or Iran and ICE's declaration stating ICE is in the process of removing petitioner to Afghanistan show petitioner's removal is significantly likely in the reasonably foreseeable future. Id. at 8. For the reasons discussed below, the undersigned disagrees.

Petitioner's prolonged detention claim is a due process claim under the Fifth Amendment (as articulated in Zadvydas)—not a violation of 8 C.F.R. § 241.4. Under Zadvydas, the relevant inquiry for release is whether there is a reasonably likelihood of petitioner's removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701. Under 8 C.F.R. § 241.4, on the other hand, "[t]he Service may release a [noncitizen] . . . if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, *without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future*." 8 C.F.R. § 241.13(b)(1); see id. § 241.4(e) (emphasis added). Because likelihood of removal in the reasonably foreseeable future is *not* a factor considered or required for release under § 241.4, respondents review of petitioner's detention under § 241.4 is irrelevant and does not rebut petitioner's showing under Zadvydas.

To the extent the regulations are relevant, the undersigned finds 8 C.F.R. § 241.13 is the pertinent provision. Section 241.13 was added to the Code of Federal Regulations after the decision in Zadvydas to incorporate the constitutional limitations on detention of noncitizens after the expiration of the 90-day removal period under 8 U.S.C. § 1231(a). Pham, 2026 WL 673404, at *6 (citing Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56967-70 (Interim Rule Nov. 14, 2001) ("In light of the Supreme Court's decision in Zadvydas, this rule revises the Department's regulations by adding a new 8 CFR 241.13,

8

governing certain aspects of the custody determination of a detained [noncitizen] after the expiration of the removal period.")).  Section 241.13(a) states,

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal* to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."

8 C.F.R. § 241.13(a) (emphasis added).  The regulations further state that if "the Service makes a determination that there is no significant likelihood of removal in the reasonably foreseeable future," section 241.4, which assesses dangerousness and flight risk, 8 C.F.R. § 241.4(e), (f), no longer governs.  8 C.F.R. § 241.13(b)(1).  Respondents' motion to dismiss ignores the applicability of § 241.13 and that § 241.4 is rendered inoperative when there is no significant likelihood of removal in the reasonably foreseeable future.

Because § 241.13 was added to incorporate the constitutional limitations on detention of noncitizens under Zadvydas, it follows that the government's burden under both is or should be the same.  Accordingly, cases analyzing the government's burden under § 241.13 inform the government's burden to rebut under Zadvydas.

In analyzing the requirements under 8 C.F.R. § 241.13, this court in Hoac found that respondents had not met their burden because, "Respondents have not provided details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."  Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025).  Similarly, in Yang-Ling X, this court found respondents failed to meet their burden of establishing petitioner's removal was significantly likely in the reasonably foreseeable future because

> Respondents fail to explain why [the country of removal] did not issue a travel document in the past or why [the country of removal] is likely to issue a travel document for petitioner in the reasonably foreseeable future.  Respondents do not explain whether the United States and [the country of removal] have a repatriation agreement in place, do not explain whether removals to [the country of removal] are common, do not identify what considerations the Government of [the country of removal] might take into account when deciding whether to issue a travel document, and do not explain whether the

9

> Government of [the country of removal] will look favorably upon petitioner's case.

Yang-Ling X v. Lyona, No. 1:25-cv-KES-CBD (HC), ___ F. Supp. 3d ____, 2025 WL 3123793, at *4 (E.D. Cal. Nov. 7, 2025).  Relying on Hoac and Yang-Ling X, the undersigned, in Pham, found that a conclusory statement that removal is significantly likely in the reasonably foreseeable future does not satisfies respondents' burden under the regulations.  Pham, 2026 WL 673404 at *10.

As in Hoac, Yang-Ling X, and Pham, the undersigned finds that to rebut petitioner's showing, respondents must provide something more than conclusory statements that removal is significantly likely in the reasonably foreseeable future, and/or that a request for travel documents is pending or forthcoming.  Cf. Hoac, 2025 WL 1993771, at *4; Yang-Ling X, 2025 WL 3123793, at *4; Pham, 2026 WL 673404 at *10.  Respondents must provide evidence showing *why* removal is significantly likely in the reasonably foreseeable future.  Evidence showing removal is significantly likely in the reasonably foreseeable future includes showing that removal to the country of removal is common; that the United States and the country of removal have a repatriation agreement in place; that the noncitizen meets the considerations, if any, that the government of the country of removal might take into consideration when deciding whether to issue the noncitizen travel documents; and/or, if applicable, that a new request for travel documents redresses any issue with prior requests.  The evidence must also provide insight regarding the expected *timing* for removal.  For example, if a country of removal typically grants travel documents but it takes a year to obtain them for a noncitizen, respondents will likely be unable to show removal is significantly likely in the *reasonably foreseeable future*.

Here, respondents rely on a sworn declaration from a deportation officer that states "ICE prepared and submitted a second request for the purpose of obtaining a Request for Afghanistan Transportation Letter."  Without more, this is insufficient to rebut petitioner's showing that his removal is not significantly likely in the reasonably foreseeable future.  The same declaration admits that the first request was denied for "unknown reasons."  Yet, it does not explain how the second request differs from the first, if at all, why the second request is likely to result in a

10

different outcome than the first, and when the request, which has been pending for nine months, might be adjudicated.

Conclusory statements from May and December 2025 are also insufficient to rebut petitioner's showing because neither statement explains what ICE is doing (beyond submitting a second request to Afghanistan) to obtain travel documents from other countries and to process petitioner for removal to Afghanistan, or the anticipated timing for petitioner's removal. Petitioner's removal order from eighteen months ago also fails to meet respondents' burden to rebut because neither the order nor respondents explain how a removal order issued eighteen months ago *presently* makes petitioner's removal to Iran significantly likely in the reasonably foreseeable future. If anything, the removal order supports petitioner's argument that his removal is not significantly likely in the reasonably foreseeable future because, despite this alternative, for the past eighteen months respondents have not removed petitioner to Iran, nor have they provided evidence of any effort to do so.

Because respondents have failed to rebut petitioner's showing of "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the undersigned finds that petitioner's continued prolonged detention is no longer reasonable, no longer authorized by statute, and violates the Fifth Amendment Due Process Clause.

### 3. Remedy

The court will grant the petition on this claim and order petitioner's immediate release under appropriate conditions of supervision. See e.g., Yang v. Warden, California City Corr. Ctr., No. 2:26-CV-00832-DAD-DMC, 2026 WL 765027, at *2 (E.D. Cal. Mar. 18, 2026) (finding "the remedy for a successful Zadvydas claim is generally release of the habeas petitioner under conditions of supervision"); Celis v. Bondi, No. 2:26CV00079-GMN-DJA, 2026 WL 710961, at *4 (D. Nev. Mar. 13, 2026) (same); see also Nguyen v. Hermosillo, No. 2:26-cv-0335 GJL, 2026 WL 538497, at *5 (W.D. Wash. Feb. 26, 2026) ("The Supreme Court in Zadvydas considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal." (citing Zadvydas, 533 U.S. at 699-700)).

////

B. Ground Two: Third Country Removal Procedures Violate Due Process.

The amended petition alleges that ICE's current procedures relating to the removal of persons to third countries violates due process and that the government is likely to seek third-country removal in petitioner's case if Afghanistan rejects the second request for travel documents, as it did with the first. ECF No. 33 at 7-12. In response, respondents argue that petitioner's claim is speculative and that an injunction is unnecessary because respondents plan to abide by Ninth Circuit authority, which they understand to require notice and an opportunity to be heard prior to removal to a third country. ECF No. 34 at 2-3. Respondents also acknowledge that the undersigned "has already found the policy at issue as violative of due process and ordered procedures akin to that requested in this matter." Id. at 4 (citing Pham v. Warden, No. 1:25-cv-1873 DC AC, 2026 WL 673404, at *17 (E.D. Cal. Mar. 10, 2026)).

Because the facts in this case are not materially distinguishable from the facts in Pham, 2026 WL 673404, and Nguyen v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-1708 AC P, 2026 WL 292874 (E.D. Cal. Feb. 4, 2026), the court adopts the reasoning in those cases and similarly finds that the third-country removal policy at issue violates due process and permanent injunction restraining respondents from applying the unconstitutional policy is warranted. The undersigned is unpersuaded by respondents' promise to adhere to Ninth Circuit authority, rendering an injunction unnecessary. Absent an injunction, nothing would prevent respondents from releasing petitioner, re-detaining him in a different jurisdiction, and removing him under the unconstitutional procedures. Accordingly, respondents will be enjoined from removing petitioner to a third country without first providing adequate notice and an opportunity to raise a fear of removal.

VI.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's amended petition for writ of habeas corpus (ECF No. 33) is GRANTED.

2. Respondents' motion to dismiss (ECF No. 34) is DENIED.

3. Respondents' motion to dismiss (ECF No. 13) is DENIED as MOOT.

////

12

4. Respondents shall:

    a. IMMEDIATELY RELEASED Morteza Zakeri (A# 217-018-723) from ICE custody under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.

    b. RETURN all of petitioner's documents and possessions upon his release from custody.

    c. FILE a notice of compliance within three (3) days from the date of this order, confirming petitioner's release from custody and the return of his documents and possessions.

5. Respondents and their officers, agents, servants, employees, and persons acting on their behalf, in concert or in participation with them, are PERMANENTLY ENJOINED and RESTRAINED from removing petitioner to a third country unless they adhere to the following procedures:

    a. Provide petitioner and his counsel a meaningful opportunity and a minimum of ten days to raise a fear-based claim for protection prior to removal;

    b. If petitioner demonstrates reasonable fear of removal to the third country, respondents must move to reopen petitioner's removal proceedings; and

    c. If petitioner is not found to have demonstrated a reasonable fear of removal to the third country, respondents must provide a meaningful opportunity and a minimum of fifteen days for petitioner to seek reopening of his immigration proceedings.

6. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case.

DATED: April 16, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

13